IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| SUSAN P. HOLLAN, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:14-CV-00426-LMM |
| WEB.COM GROUP, INC., | : | |
| Defendant. | : | |

## ORDER

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R"), Dkt. No. [64], recommending that the Court **GRANT** Defendant's Motion for Summary Judgment [38].

The facts and procedural history of this case are set forth in the R&R and are fully incorporated herein by reference.

Pursuant to 28 U.S.C. § 636(b)(1), on April 29, 2015, Plaintiff Susan Hollan filed objections to the R&R. Dkt. No. [68]. On May 22, 2015, Defendant Web.com Group Inc. filed a brief in response to Plaintiff's objections. Dkt. No. [71]. On June 8, 2015, Plaintiff filed a Motion for Leave to File a Reply Brief [72].[1]

---

[1] Neither Federal Rule of Civil Procedure 72(b)(2) nor Local Rule 72 provide for reply briefs to responses to objections to a report and recommendation. Therefore, Plaintiff's Motion for Leave to File Reply [72] is **DENIED**.

## I. Legal Standard

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate's Report and Recommendations for clear error if no objections are filed to the report. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must determine *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id. As Plaintiff filed timely objections to the Magistrate Judge's findings, the Court reviews the challenged findings and recommendations on a *de novo* basis.

## II. Analysis

### 1. **Plaintiff's Objections to Factual Findings in the R&R**

#### A. Discovery of Plaintiff's Falsification

First, Plaintiff objects to Judge Johnson's factual finding that Plaintiff's supervisor, Jefre Futch, discovered a purported falsification by Plaintiff while she was on approved FMLA leave. Dkt. No. [68] at 3. The R&R found that Plaintiff falsely represented to an employee in Defendant's finance department that she had finished building Hand & Stone's website, and that Hand & Stone should be billed an invoice of over $15,500 for this work, when she had in fact not finished this work. Dkt. No. [64] at 18-20. Plaintiff's objection references an August 4, 2013 e-mail where Mr. Futch asks another employee, Rosanny Cobos, to send him "the email" that Plaintiff had sent with the false representation. Id. at 4. Plaintiff argues that this demonstrates that Mr. Futch was aware of the

falsification in March 2013 when he became involved in the Hand & Stone billing issue, and that his testimony that he discovered the falsification in August 2013, while Plaintiff was on FMLA leave, is directly contradicted. Plaintiff argues that Mr. Futch used the falsification as a pretext for firing Plaintiff for other reasons.

Plaintiff also objects to Judge Johnson's finding on the falsification issue by claiming that "Futch did not honestly believe that [Plaintiff's] email stating her belief that the . . . website had been completed . . . constitute[d] a terminable falsification." Id. at 8. Essentially, Plaintiff argues that if Mr. Futch and Defendant had honestly believed that the falsification justified her termination, then she would have been terminated in March 2013. Id.

The Court agrees with Judge Johnson's findings. The August 4, 2013 email stated, "I understand that [Plaintiff] requested the Hand-n-Stone website to be billed back in 2012 and suggested all work was completed. Can you please send me the email from [Plaintiff] stating this?" Dkt. No [68-1] at 1. While this email does indicate that Mr. Futch had knowledge of the falsification prior to August 4, 2013, it does not dispute Mr. Futch's testimony that he discovered the falsification while Plaintiff was on leave. Before Plaintiff went on leave, Mr. Futch only knew that there were issues with Hand & Stone and an incorrect invoice on their account. The Court finds nothing in the record indicating that Mr. Futch knew Plaintiff lied about building the Hand & Stone website before she went on FMLA leave. Furthermore, the Court finds no evidence in the record that Mr. Futch and Defendant did not honestly believe that Plaintiff made this false

representation and that it therefore justified her termination. Therefore, Judge Johnson correctly found that no dispute of material fact existed here.

B. Meineke Account

Plaintiff also objects to the R&R's factual findings in regards to her handling of the Meineke account. Judge Johnson found Meineke was an account that Plaintiff largely developed, but that Mr. Futch and James Blasco needed to "resell" the account while Plaintiff was on FMLA leave. Dkt. No [64] at 15-17. Judge Johnson also found that Mr. Futch blamed this loss of business on Plaintiff's actions before she went out on leave. Id. Plaintiff argues that Meineke decreased its budget prior to her FMLA leave from $1.55 million to $850,000, and therefore Mr. Futch and Mr. Blasco did not need to "resell" the account to obtain a commitment for the $850,000 because this commitment had already been obtained. Dkt. No. [68] at 9-11. She also argues that it was Mr. Blasco, not her, who should be blamed for issues with the Meineke account. Id. Plaintiff claims that Mr. Futch's response to an email she sent in June 2013 proves Mr. Futch believed Mr. Blasco was in charge at that time. Dkt. No. [68] at 10.

The Court agrees with Judge Johnson's findings. There is no dispute as to the facts surrounding the Meineke account. Although Plaintiff is correct that Meineke's initial reduction in their quarterly budget with Defendant to $850,000 occurred before Plaintiff went on FMLA leave, Plaintiff does not dispute the fact that, after her departure, Meineke indicated to Defendant that they planned to end their contract entirely and reduce the budget to zero. Dkt. No. [53-3] at 28-

4

29. At this point, Defendant, through Mr. Futch, realized that it needed to "resell" Meineke on Web.com's services, and did so while Plaintiff was on FMLA leave. Id. Nothing in the record contradicts this. Furthermore, Plaintiff does not dispute that Meineke's Chief Marketing Officer did not know who Plaintiff or Web.com were, and that Mr. Futch had to introduce Web.com to the CMO and explain the services it offers. Dkt. No. [38-2] ¶ 32; Dkt. No. [41-1] ¶ 32. Mr. Futch attributed Meineke's lack of awareness to Plaintiff's actions prior to her FMLA leave. Dkt. No. [64] at 17. These reasons that Mr. Futch provided when justifying the termination of Plaintiff's employment are not disputed. Dkt. No. [38-2] ¶ 32; Dkt. No. [41-1] ¶ 32.

Plaintiff argues that Mr. Futch's criticism of her handling of the account was unfair because Mr. Blasco had responsibility for the Meineke account. Dkt. No. [68] at 10-11. Plaintiff alleges that the Magistrate ignored her affidavit testimony that in June 2013 she was chastised by Mr. Futch for taking the credit for a success with the Meineke account, instead of allowing Mr. Blasco to take the credit, and testimony by Mr. Blasco that he had assumed responsibility for the account when Plaintiff went on leave. Id. at 11. First, the Court notes that the Magistrate specifically quoted Plaintiff's affidavit testimony, Dkt. No. [64] at 15, and articulated her argument in the statement of facts. Id. at 17-18. The Magistrate considered that argument and ultimately determined that "[a]lthough the problems with the Meineke account were serious, the proverbial straw [that broke the camel's back] was Mr. Futch's reasonable belief that [Plaintiff] had

5

made a false statement about the Hand & Stone website." Dkt. No. [64] at 55.

Second, Mr. Blasco taking over the account when Plaintiff went on leave does not

preclude Mr. Futch from blaming her for problems resulting from her actions

*before* she went on leave. Therefore, the Court agrees with Judge Johnson that

there is no dispute of fact as to the Meineke account.

    C.  <u>JanPro account</u>

    Plaintiff objects to Judge Johnson's finding that Plaintiff ignored Mr.

Futch's direction on how to handle the JanPro account. Dkt. No. [68] at 12.

Plaintiff argues that a factual dispute exists because Mr. Futch stated in his

deposition that "I did not get further complaints from JanPro about Susan

[Hollan] after . . . that incident." Dkt. No. [53-1] at 55. Plaintiff argues that this

contradicts Judge Johnson's finding about Plaintiff's mishandling of the JanPro

account.

    The Court agrees with Judge Johnson that it is undisputed that Plaintiff

ignored Mr. Futch's direction in handling the JanPro situation. Mr. Futch's

admission that he did not get further complaints about Plaintiff from JanPro

referred to complaints *after* Plaintiff ignored Mr. Futch's initial direction. Mr.

Futch directed Plaintiff to take a secondary coaching role and allow Jillian Green,

Plaintiff's subordinate, to primarily handle this client. Dkt. No. [38-5] at 22-23;

Dkt. No. [38-2] ¶ 18. Plaintiff ignored this direction, and instead had a meeting

with the client about issues it had conveyed to Ms. Green. Dkt. No. [38-5] at 22-

23. After receiving complaints from the client, Mr. Futch again directed Plaintiff

to allow Ms. Green to have the primary role and to support her in this work. Id. at 26-27. Mr. Futch explained that since that time he had not received any further complaints from JanPro about Plaintiff. Id. at 27. Therefore, the Court adopts Judge Johnson's finding that there is no factual dispute as to the JanPro incident.

D. Plaintiff's Colleagues' Opinions

Plaintiff objects to Judge Johnson's determination that Plaintiffs colleagues' opinions of her work performance are immaterial. Dkt. No [68] at 12. Plaintiff argues that these opinions directly contradict Mr. Futch's description in his August 7, 2013 termination recommendation email, and are necessary for her to establish pretext.

The Court finds that these opinions are immaterial for a number of reasons. First, these opinions do not contradict the reasons listed by Mr. Futch in his email recommending Plaintiff's termination. Mr. Futch stated in this email that he had received several complaints about Plaintiff, all relating to her ability to work with others. Dkt. No. [48-1] at 65. Mr. Futch listed a number of examples, including that she was "dismissive to others," "not a team player," that she "[threw] others under the bus," and more. Id. Even if Plaintiff can show that her colleagues believed that she could perform her job well, this does not dispute the allegations that she was not a team player and was difficult to work with, which are the reasons cited in Futch's email. That some colleagues spoke highly of her does not dispute the fact that some spoke negatively of her. Furthermore, only Plaintiff's superiors could, and did, terminate her. Therefore, the opinions of

Plaintiff's co-workers are immaterial to the thought process behind her termination.

Finally, Plaintiff's colleagues' opinions are immaterial to the central reason that Defendant terminated Plaintiff. Although Plaintiff may have been good at her job generally, Defendant ultimately decided to terminate her because she lied. Even if Plaintiff's colleagues believed that she performed her job well, this is immaterial to the fact that Defendant decided to terminate Plaintiff because of what they reasonably believed to be a willful falsification.

Therefore, the Court agrees with Judge Johnson that Plaintiff's colleagues' opinions are immaterial, and adopts the R&R's findings in regards to this issue as the findings of this Court.

E.  <u>James Blasco</u>

Plaintiff next makes objections relating to the similarly-situated male comparator analysis and Defendant's hiring and subsequent demotion of James Blasco.

First, Plaintiff objects to the R&R's lack of discussion of her qualifications for the job in its similarly situated comparator analysis. Dkt. No. [68] at 22. Specifically, Plaintiff argues that the R&R "conspicuously omitted . . . any discussion of [Plaintiff's] qualifications to retain her . . . position" <u>Id.</u>  She contends that by not discussing her qualifications for the job, the R&R failed to provide context that is essential for effective analysis of similarly situated comparators. Dkt. No. [68] at 22.

The Court finds that Plaintiff's qualifications are immaterial to this issue. Defendant has not disputed that Plaintiff has the qualifications necessary for the position from which she was terminated. But, Defendant does not base its reasons for termination of Plaintiff on her qualifications. Defendant alleges that it terminated Plaintiff because she made a false representation and was difficult to work with. Plaintiff's male comparator must be "similarly situated in all *relevant* respects." See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (emphasis added). Even assuming she and Mr. Blasco had identical qualifications, the relevant facts are that she lied about an account and was difficult to work with. Therefore, she was not similarly situated to Mr. Blasco in all relevant aspects.

Plaintiff also objects to the R&R's failure to consider the alleged pay disparity between her and Mr. Blasco. Dkt. No. [68] at 17. However, this alleged disparity is immaterial. Plaintiff has not made a discrimination claim based on pay disparity, but instead bases her discrimination claim on her termination. The fact that Mr. Blasco may have received more money in compensation is immaterial to the situation surrounding her termination. The Eleventh Circuit requires that a plaintiff present a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). The allegation of pay disparity fails to rise to this level.

Plaintiff also objects to the R&R's finding that Defendant selected Mr. Blasco as Senior Vice President before Defendant's Chief Marketing Officer, Jason Teichman, knew who Plaintiff was. The R&R found that "[t]he record shows that [D]efendant was interviewing candidates for that SVP position before it acquired Network Solutions (the company that previously employed [P]laintiff), and that [D]efendant selected Mr. Blasco before Mr. Teichman even knew who [P]laintiff was." Dkt. No. [64] at 8 n.8. Plaintiff argues that deposition testimony by Rosie Duran, Defendant's Human Resources Director, contradicts this finding and shows that Plaintiff was the victim of sex-based bias. Dkt. No. [68] at 18-19.

However, the Court agrees with Judge Johnson's finding. Mr. Teichman testified that he hired Mr. Blasco in December 2011, before Mr. Teichman knew any details about the employees at Network Solutions or which of these employees would remain after the merger. Dkt. No. [41-12] at 23-24. Ms. Duran's testimony does not contradict this evidence. Ms. Duran simply states that all of the senior managers were involved in discussions about the Network Solution employees and that she and other senior managers were excited about Plaintiff joining the company. Dkt. No [61-1] at 17-18. Ms. Duran's references to other "senior managers" in general does not contradict Teichman's specific testimony that he was unaware of who Plaintiff was. This fails to create a factual dispute.

Furthermore, this fact is immaterial because Plaintiff is not pursuing a discrimination claim based on Mr. Blasco being hired for the supervising position

instead of her. Since Plaintiff does not claim that she applied or asked to be considered for this position, this allegation does not provide circumstantial evidence of gender discrimination.

Therefore, Judge Johnson correctly found that Defendant selected Blasco as Senior Vice President before Teichman knew who Plaintiff was. This finding is adopted by the Court.

F.  Commission Plan

Plaintiff objects to the R&R's finding that Defendant terminated the commission plan in January 2012. Under her commission plan with Network Solutions, Plaintiff received two percent of the net billed revenue from accounts she secured. Dkt. No. [41-1] ¶ 4. Plaintiff argues that "the evidence shows that [Defendant] never informed [Plaintiff] that it had terminated her initial commission plan" and that "[Defendant] told [Plaintiff] throughout her employment, that it was . . . working on the commissions she was owed . . . right up through . . . the date she was terminated." Dkt. No. [68] at 20.

However, Plaintiff admitted that Defendant stopped paying her commissions under that commission plan in January 2012. Dkt. No. [41-1] at 10. There is no factual dispute here. The remainder of Plaintiff's objections in regards to the commission plan relate to legal conclusions of the R&R, which are discussed below. See infra pp 20-22.

G.  Pretext

Finally, Plaintiff objects to Judge Johnson's finding that she has failed to establish pretext. She bases this argument on the alleged factual disputes discussed above. Because all of Plaintiff's factual objections were either immaterial or did not create a dispute of fact, the Court agrees with Judge Johnson that Plaintiff has failed to establish that Defendant's proffered reasons for termination of her employment are pretext for discrimination.[2]

## 2. __Plaintiff's Objections to Legal Conclusions in the R&R__

### A. Similarly-Situated Analysis

Plaintiff next objects to the R&R's legal analysis of similarly situated comparators for her Title VII claim.

First, Plaintiff objects to Judge Johnson's finding that Plaintiff failed to identify a similarly-situated male comparator who was treated more favorably than her. Dkt. No. [68] at 15. Plaintiff argues that Mr. Blasco is a similarly-situated male comparator because he held the same position as her, and that he was given the option of leaving the company or being demoted, while she was terminated. Dkt. No. [68] at 15-16.

Judge Johnson provided three reasons for why Mr. Blasco is not a proper male comparator: (1) his discipline was related to performance issues, while Plaintiff's discipline was for lying; (2) Mr. Blasco held a different rank with

---

[2] The Court need not address Plaintiff's pretext allegations because she has not established a prima facie case of discrimination. See infra pp. 12-17.

different job responsibilities; and (3) Mr. Futch decided to terminate Plaintiff, while he was not involved in Mr. Blasco's disciplinary actions.

> Mr. Blasco is not a proper comparator because he was not similarly situated to her in all relevant aspects. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (the plaintiff and the employee she identifies as a comparator must be similarly situated in all relevant respects). Defendant demoted Mr. Blasco for performance issues, but as noted above, terminated plaintiff for falsification. That is not similar conduct. Moreover, when defendant demoted Mr. Blasco, he was plaintiff's manager, not her peer. Material differences in rank and job responsibilities can preclude a colleague from being a valid comparator. See Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1281 (11th Cir. 2008). Finally, Mr. Futch was the decisionmaker for plaintiff's termination, whereas he was not the decisionmaker for Mr. Blasco's demotion, which occurred before defendant even hired Mr. Futch. See Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) ("[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.").

Dkt. No. [64] at 41-42.

The Court agrees with Judge Johnson's finding that Mr. Blasco was not similarly situated to Plaintiff. Even if Plaintiff and Mr. Blasco held the same position, that is not enough to make them similarly situated in all relevant aspects, which means that he is not a proper comparator. Defendant demoted Mr. Blasco for performance reasons, while Plaintiff was fired for falsification. The Court views this conduct as distinct because a reasonable employer would treat an employee who has willfully lied differently from an employee who simply has performance problems. This precludes Mr. Blasco from being a suitable male comparator. Finally, Mr. Futch made the decision to terminate Plaintiff, but was not involved in the disciplinary actions taken against Mr. Blasco. Mr. Futch had

13

not even joined the company at the time Mr. Blasco was demoted. This prevents Mr. Blasco from being comparable to Plaintiff. See Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) ("[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.").

Second, Plaintiff argues that the R&R's analysis "effectively requir[es] identically-situated comparators mean[ing] that no one can ever state or prove a claim of disparate treatment." Dkt. No. [68] at 22. She further argues that the R&R, by not discussing her qualifications for the job, failed to provide context that is essential for effective analysis of similarly situated comparators. Id.

However, the Court finds that the R&R provides an accurate statement of the law, and does not place too high of a burden on a plaintiff seeking to identify a similarly situated comparator. The burden is a high one, requiring that the employee be similarly situated in "all relevant aspects" to prevent courts from second-guessing reasonable decisions by the employer." Wilson, 376 F.3d at 1091. "In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are . . . accused of the same or similar conduct and are disciplined in different ways." Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001). The most important factors are "the nature of the offenses committed and the nature of the punishments imposed." Id. Plaintiff's qualifications may be relevant if this claim alleged hiring discrimination or if Plaintiff was terminated because Defendant stated that she was unqualified.

Because that is not the case, the Court finds Plaintiff has failed to identify a proper male comparator, an essential element of her Title VII claim.

The Court agrees that summary judgment should be entered in favor of Defendant on this claim, and **ADOPTS** the R&R as the findings of this Court as to Plaintiff's Title XII claim.

B.  <u>FMLA and ADA Claim</u>

Plaintiff objects to the R&R's findings on her FMLA and ADA claims in similar fashion.

Plaintiff objects to the "summary disposition" of her FMLA claim. Specifically, Plaintiff claims that she was terminated in violation of the FMLA after she informed Mr. Futch that she would need a second medical leave, and that "[u]nder the [R&R's] analysis . . . all an employer . . . will need . . . to do in order to avoid liability under the FMLA or the [ADA] is to terminate the employee before s/he submits a formal written request for such leave." Dkt. No. [68] at 28.

First, the Court disagrees with Plaintiff that the R&R's analysis sets the standard too low for employers to meet the requirements of the FMLA. Under the FMLA, an employee must give his or her employer sufficient notice of his or her specific plans to take leave, and explain for what reason he or she is taking leave. <u>Lowery v. Strength</u>, 356 F. App'x 332, 333 (11th Cir. 2009). While an employee need not provide a "formal written request" to trigger FMLA protection, as Plaintiff asserts, she must still provide sufficient notice. <u>Id.</u> Additionally, if an

employee can show that he or she was entitled to FMLA leave, an employer must show that it had a legitimate reason for terminating the employee. Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1242 (11th Cir. 2010). An employee who has taken FMLA leave can still be terminated for legitimate reasons. Id.

Additionally, Plaintiff has also not alleged that Defendant denied any benefit under the FMLA that she was entitled to receive. The evidence Plaintiff points to only shows that Plaintiff discussed FMLA leave in general in February 2013, months before her first leave, and that she never specifically discussed a second medical leave. Dkt No. [49-1] at 4-6. Plaintiff was permitted to go on FMLA leave, and was never denied permission to go on another FMLA leave. Therefore, the Court finds that the R&R's analysis is proper.

Plaintiff also has not shown that Defendant terminated her because she took FMLA leave or because she was considering taking more in the future. Courts do not examine whether the FMLA leave was the but-for cause of the termination, but instead whether it was the proximate cause. Schaaf, 602 F.3d at 1242. An employer can fire an employee returning from FMLA leave if it discovers legitimate grounds for the termination while the employee is on leave. Id. The statute is not intended to protect an employee who chooses to go on leave from adverse employment action due to past professional digressions. Id. An employee cannot seek protection from disciplinary action for professional misconduct by going on FMLA leave. Id.

16

As discussed above, while Plaintiff was on FMLA leave, Defendant discovered multiple problems that raised concerns about Plaintiff's fitness for employment. The primary concern was her false representation of the Hand & Stone account. Therefore, she cannot establish a prima facie FMLA retaliation or interference claim.

Therefore, Judge Johnson correctly found that summary judgment should be entered for Defendant on Plaintiff's FMLA claim because there is no evidence of interference or retaliation, and the Court **ADOPTS** the R&R as the findings of this Court as to Plaintiff's FMLA claim.

The Court also agrees with Judge Johnson that Plaintiff failed to establish the prima facie elements of an ADA claim. An employer is not required to provide a reasonable accommodation under the ADA unless an employee makes a specific demand for those accommodations. Knowles v. Sheriff, 460 F. App'x 833, 835 (11th Cir. 2012) (per curiam) ("The duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation."); Branscomb v. Sec. of Navy, 461 F. App'x 901, 905 (11th Cir. 2012) ("[A] plaintiff cannot maintain a claim of disability discrimination based on his employer's failure to provide a reasonable accommodation unless he specifically demanded such an accommodation."). The Court does not find any evidence that Plaintiff made a specific request to Defendant for accommodations under the ADA, and thus no duty to accommodate was triggered. Plaintiff only told Defendant in February 2013, five months before she went on her first FMLA

17

leave, that she would need medical leave in general, and did not specifically address a second FMLA leave. Dkt No. [49-1] at 4-6. The Court finds that this does not rise to the level of a specific demand that is required for a prima facie ADA claim.

Therefore, Judge Johnson correctly found that summary judgment should be entered for Defendant on Plaintiff's ADA claim. The Court **ADOPTS** the R&R as the findings of this Court as to Plaintiff's ADA claim.

C. Pretext Analysis

Plaintiff objects to the R&R's legal analysis of pretext. Since there is no direct evidence of discrimination by Defendant, the Court must utilize the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), to analyze circumstantial evidence in discrimination claims. First, a plaintiff must establish a prima facie case of discrimination. See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998). If the plaintiff establishes this prima facie case, then the burden shifts to the employer to rebut this presumption of discrimination with evidence of a legitimate, non-discriminatory reason for the adverse employment action. Kragor v. Takeda Pharm. of Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012). If the employer offers evidence of a legitimate reason for the adverse employment action, the plaintiff is given an opportunity to show that this stated reason is a pretext for discrimination. Id.

However, as discussed above, the Court finds that Plaintiff cannot establish prima facie ADA, FMLA, or Title XII claims. See supra pp 12-17. Because she has not satisfied her initial burden, the burden-shifting analysis ends. Kragor, 702 F.3d at 1308. Therefore, Plaintiff's pretext arguments are irrelevant.

Even if Plaintiff were permitted an opportunity to prove pretext, the Court finds that the evidence in the record is insufficient. To establish pretext, a plaintiff must show that "the proffered reason was not the true reason for the employment decision." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). The Court agrees with Judge Johnson's finding that Plaintiff has not established that the reasons proffered by Defendant for its decision to terminate Plaintiff are pretextual. Plaintiff has not shown any direct evidence of discrimination by Defendant, nor has she established inconsistencies, implausibilities, or contradictions in Defendant's proffered rationale for its termination of Plaintiff. Even if Plaintiff disagrees with Defendant's decision to fire her for these reasons, it was within Defendant's own business judgment as a reasonable employer to take this action. A plaintiff is not allowed to "recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

19

Therefore, Judge Johnson correctly concluded that Plaintiff failed to establish that Defendant's proffered reasons for Plaintiff's termination were pretextual in nature.

D. <u>Breach of Contract Claim</u>

Plaintiff next objects to the "summary disposition" of her breach of contract claim for unpaid commissions. Dkt. No. [68] at 28-29. The R&R found that the language of the Offer Letter was clear and unambiguous, and that Defendant had the unilateral right to modify Plaintiff's compensation from time to time, including her commission plan. Dkt. No. [64] at 33. Plaintiff argues that the language of agreement is ambiguous, and that the R&R's "attempt to resolve the inherent ambiguity and conflict in the contractual language violates basic principles of contract interpretation." Dkt. No. [68] at 28-29.

Specifically, Plaintiff highlights three provisions of the agreement that she asserts are inconsistent and contradictory. First, she points to the provision that states that her "original hire date, base salary and commissions (if applicable) . . . will not change." Dkt. No. [68-7] at 1. The agreement goes on to say that "[t]he company may modify your compensation from time to time at its discretion." <u>Id.</u> Then, it states "[t]his letter agreement cannot be changed except in a written agreement signed by you and a duly authorized officer of the Company." <u>Id.</u> at 3.

Judge Johnson correctly stated the law on contract interpretation. Under Georgia law, the interpretation of contracts involves three steps. <u>White v. Kaminsky</u>, 610 S.E.2d 542, 544-45 (Ga. Ct. App. 2004). Contract interpretation

initially is a question of law for the court. O.C.G.A. § 13-2-1. The court must first determine if the contract language is ambiguous. Id. If the language is clear and unambiguous, then it is controlling and the court simply enforces the contract according to those clear terms. Id. However, if the language is ambiguous, the second step is for the court to apply the rules of construction set out in O.C.G.A. § 13-2-2. Empire Distrib., Inc. v. George L. Smith II Ga. World Cong. Ctr. Auth., 509 S.E.2d 650, 653 (Ga. Ct. App. 1998). If, after considering the rules of construction, the court determines that there is still ambiguity, then a jury must resolve what the ambiguous language means and what the parties intended. Id.

The Court agrees with Judge Johnson that the language of the Offer Letter is clear and unambiguous, and gives Defendant the right to unilaterally modify Plaintiff's compensation at its discretion. In the context of the entire Offer Letter, the terms highlighted by Plaintiff simply state that Plaintiff will initially receive from Defendant the same compensation she received from Network Solutions before the merger of the two companies, but that this compensation can then be modified by Defendant at its discretion. The term stating that the compensation "will not change" only signifies that, on Plaintiff's first day of employment, she would be compensated at the same rate that she was compensated by Network Solutions. After that, Defendant could unilaterally modify her pay. The Offer Letter provides that Plaintiff's employment was at-will, and therefore she was not obligated to work for Defendant. If she did not approve of her compensation or modifications to the compensation, then she was free to leave.

21

Furthermore, the provision of the Offer Letter that states "[t]his letter agreement cannot be changed except in a written agreement signed by you and. . . [Defendant]" does not create ambiguity. This provision simply means that a written, signed agreement is needed to change a *term* of the Offer Letter. For example, a signed agreement would be necessary for Defendant to give up its right to unilaterally modify Plaintiff's compensation, because this is a term of the Offer Letter. Since Plaintiff's compensation is only guaranteed by the Offer Letter to not change at the outset of her employment, her compensation rate after the beginning of her employment is not a term of the contract. Therefore, no signed agreement is necessary to change her compensation, but instead only to change the manner in which her compensation is determined. This provision of the contract is not ambiguous.

Therefore, the Court agrees with Judge Johnson that Plaintiff's claim for breach of contract for unpaid commissions fails as a matter of law. Since Defendant had the unilateral right to modify Plaintiff's compensation, Defendant did not breach any terms of the Offer Letter. Judge Johnson correctly found that summary judgment should be granted to Defendant on Plaintiff's breach of contract claim, and the Court **ADOPTS** the R&R as the findings of this Court as to this claim.

E.  Intentional Infliction of Emotional Distress ("IIED") Claim

Finally, Plaintiff objects to Judge Johnson's "summary resolution" of her IIED claim. Dkt. No. [68] at 38. Plaintiff argues that Defendant's treatment of her

was "beyond the pale" and that "a jury should be given the opportunity to consider whether . . . an award for damages . . . is appropriate." Id. at 39.

However, the Court agrees with Judge Johnson that Plaintiff's IIED claim fails as a matter of law. Under Georgia law, to sustain a claim for IIED, a plaintiff must show that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress suffered was severe. Bridges v. Winn-Dixie Atl., Inc., 335 S.E.2d 445, 447-48 (Ga. Ct. App. 1985).

Plaintiff fails to meet this stringent burden. She argues that "[i]t's one thing to kick a person when s/he's down. It's quite another to summarily terminate an executive . . . whose . . . team . . . exceeded its targeted goals . . . as [she] is returning to work . . . from . . . surgery." Dkt. No. [68] at 39. The Court believes this falls short of the high burden required to establish this claim. Although Defendant's conduct may be viewed as distasteful, it does not constitute the type of outrageous, extreme, or utterly intolerable conduct that the law requires. Instead, it falls with the multitude of other employment cases where courts have rejected IIED claims.[3] "Whether a claim rises to the requisite level of

---

[3] See, e.g., Baynes v. Philips Med. Sys. (Cleveland), Inc., 410 F. App'x 291, 292-93 (11th Cir. 2011) (holding that an employer's conduct, including forcing an employee to travel for seventeen days shortly after undergoing heart catheterization, disclosing her confidential medical information, causing anxiety attacks with false accusations, and terminating the employee for a false reasons failed to rise to the level required for IIED).

outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." <u>Yarbray v. S. Bell Tel. & Tel. Co.</u>, 409 S.E.2d 835, 838 (Ga. 1991). The Court finds that Defendant's actions, even if arguably disagreeable, do not rise to the requisite level of outrageousness, and thus Plaintiff is not entitled to reach a jury on this question.

Therefore, Judge Johnson correctly found that summary judgment should be entered for Defendant on the IIED claim. The Court **ADOPTS** the R&R as the findings of this Court as to Plaintiff's IIED claim.

### 3. <u>Remaining Recommendations</u>

Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's remaining recommendations for clear error and finds none.

## III.  Conclusion

The Court **ADOPTS** the Magistrate Judge's R&R [64] as the findings of this Court. Defendant's Motion for Summary Judgment [38] is **GRANTED**. Defendant's Motion for Leave to File Reply [72] is **DENIED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 1st day of July, 2015.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE